UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| STACEY D. HARPOOL, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>   Acting Commissioner of the )<br>   Social Security Administration, )<br>)<br>Defendant. ) | CASE NO.:  1:12-cv-0974-SEB-DML |

## ORDER

Stacey D. Harpool seeks judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income disability benefits ("SSI") under Titles XVI of the Social Security Act (the "Act"). *See* 42 U.S.C. 1381c(a)(3). For the reasons detailed below, the judgment is AFFIRMED.

## Applicable Standards

To be eligible for disability benefits, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). To establish disability, the claimant is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically

acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. § 416.908.

The Social Security Administration has implemented these standards in part by prescribing a "five-step sequential evaluation process" for determining disability. 20 C.F.R. § 416.920(a). If disability can be determined at any step in the sequence, an application will not be reviewed further. *Id.* At the first step, if the claimant is currently engaged in substantial gainful activity, then she is not disabled. At the second step, if the claimant's impairments are not severe, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). At step three, if the claimant's impairments, either singly or in combination, meet or equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, then the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii). The Listing of Impairments are medical conditions defined by criteria that the Administration has pre-determined are disabling.

If the claimant's impairments do not satisfy a listing, then her residual functional capacity ("RFC") is determined for purposes of the next two steps. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 416.945. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she

is not disabled. 20 C.F.R. § 416.920(f). Finally, at the fifth step, and considering the claimant's age, work experience, education, and RFC, she will be found disabled only if she cannot perform any other work in the relevant economy. 20 C.F.R. § 416.920(g). The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. *Briscoe ex rel. Taylor v. Barnhart,* 425 F.3d 345, 352 (7th Cir. 2005).

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision is supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 988 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

## Administrative Proceedings

Ms. Harpool applied for SSI disability benefits on November 18, 2009, and alleged that her disability began on January 11, 2009. (R. 129-132). Her application was denied initially and after reconsideration, and she requested a hearing. A hearing before ALJ William M. Manico was held on April 28, 2011. (R. 28-53). On June 16, 2011, the ALJ issued his decision finding that Ms. Harpool was not disabled. (R. 10-22). The Appeals Council denied Ms. Harpool's request for review on June 19, 2012, making the ALJ's disability determination the final

decision of the Commissioner. *O'Connor-Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir. 2010).

At step one of the sequential evaluation process, the ALJ found that Ms. Harpool had not engaged in substantial gainful activity since the date she filed her application for benefits.[1] At step two, the ALJ concluded that Ms. Harpool suffered from the following severe impairments: obesity, affective disorder, and substance addiction disorder, but that despite her complaints regarding hearing loss and carpal tunnel syndrome, they were not severe impairments. At step three, the ALJ found that Ms. Harpool did not have an impairment or combination of impairments that met or medically equaled any of those set forth in the Listing of Impairments.

Next, the ALJ made an RFC determination and concluded that Ms. Harpool has the capacity to perform the full range of light work as described in 20 C.F.R. § 416.967(b), but that her mental impairments require certain limitations. The ALJ limited Ms. Harpool to (a) "simple unskilled work where contact with others is routine, superficial, and incidental to the work performed" and (b) work that is not fast paced production work and which requires a regular work break once every two hours. (R. 16).

Because Ms. Harpool had no past relevant work to consider at step four, the ALJ moved to step five to determine whether, based on Ms. Harpool's vocational profile and her RFC, work existed in sufficient numbers in the relevant economy

---

[1] An applicant for SSI benefits must show disability (and financial need) as of or after the date of her application. *See Beliveau v. Apfel*, 154 F. Supp.2d 89, 93 (D. Mass. 2001). Accordingly, Ms. Harpool would be eligible for SSI benefits as of her application date of November 18, 2009, without regard to the alleged onset date of her disability.

that she is capable of performing. Based on the testimony of a vocational expert, the ALJ found that Ms. Harpool's capabilities fit the requirements of jobs that are available in significant numbers in Indiana and in the national economy. Accordingly, the ALJ found at step five that Ms. Harpool was not disabled.

## Analysis

Ms. Harpool contends that the ALJ's decision must be reversed and benefits awarded, or that a remand should be ordered, on the grounds that the ALJ's determinations at steps three and five are not supported by substantial evidence. Her arguments concern the ALJ's evaluation of Ms. Harpool's mental impairments, both at step three and as part of his RFC determination. She argues that she proved her mental impairments satisfied listing 12.08 and the ALJ erred in deciding otherwise without the advice at the hearing of a psychologist. She also faults the ALJ's negative credibility determination.

**A.     The ALJ's step three decision is free of legal error and supported by substantial evidence.**

The ALJ evaluated Ms. Harpool's mental impairments against listings 12.04 (affective disorders) and 12.09 (substance addiction disorders). Ms. Harpool contends that the appropriate listing was 12.08, which describes personality disorders. Listing 12.08 and the two listings the ALJ considered all require satisfaction of the same "B" criteria. If the ALJ's determination that Ms. Harpool's mental impairments did not satisfy the B criteria for listing 12.04 and 12.09 is supported by substantial evidence, then necessarily Ms. Harpool did not satisfy listing 12.08 either. Although these mental health listings include "C" criteria

which, if met, obviate the need to satisfy the B criteria, Ms. Harpool does not contend that she proved the C criteria were satisfied.  Thus, the appropriateness of the ALJ's decision regarding the mental health listings turns on whether substantial evidence supports his decision that the B criteria were not satisfied.

The B criteria are four broad categories of functioning:  daily living activities; social functioning; concentration, persistence, and pace; and episodes of decompensation.  A claimant is presumptively disabled by her mental impairments if she has suffered repeated episodes of decompensation of extended duration *and* is markedly limited in one of the other categories, *or* if she is markedly limited in at least two of the three other categories.  In other words, the claimant's mental impairments must manifest themselves in a severe fashion in at least two of the four B criteria.

In reaching his decision that the B criteria were not met, the ALJ made findings rooted primarily in the March 2010 assessment of state agency reviewing psychologist Kenneth Neville, Ph.D. that Ms. Harpool has (a) only mild restrictions in her activities of daily living; (b) only moderate difficulties in social functioning; (c) only mild difficulties in maintaining concentration, persistence, or pace; and (d) experienced no episodes of decompensation of extended duration.  (*See* R. 13-14). The ALJ noted that Dr. Neville's findings were later affirmed by state agency reviewing doctor Joelle Larsen, Ph.D., who made her assessment in May 2010. (R. 437-450; 467).  These medical opinions that no listing was satisfied serve as substantial evidence supporting the ALJ's decision at step three.  *Filus v. Astrue,*

694 F.3d 863, 867 (7th Cir. 2012) (ALJ did not err in accepting opinions from state agency physicians that no listings were met or medically equaled where "no other physician contradicted these two opinions").

Ms. Harpool urges, however, that it was legally erroneous for the ALJ to rely on the opinions of the state agency doctors because medical evidence post-dated the doctors' opinions and were not considered by them, thus rendering their opinions outdated and unreliable. In Ms. Harpool's view, in every case where a claimant continues to undergo care and treatment throughout the administrative process, the Social Security Administration must ask a medical expert continually to review the records and assess whether a listing is satisfied. Individuals who apply for disability benefits may have medically-significant physical or mental impairments and can be expected to continue to undergo treatment even up to the date of administrative hearings (and beyond). Were we to accept Ms. Harpool's argument, we would be requiring administrative law judges routinely to summon medical experts to testify at hearings. That would be nearly the only way an ALJ would have the benefit of a medical expert's view on the entirety of the medical evidence. We will not impose a general duty by administrative law judges to summon medical experts to hearings. If that is to be the normative procedure of Social Security disability hearings, it should be imposed by the Social Security Administration. We are not aware of any such administrative rule or regulation, or any decision by the Seventh Circuit or Supreme Court—or any court—requiring the ALJ as a matter of common procedure to summon a medical expert to testify at the hearing.

In this case, the ALJ had the benefit of the expertise of state agency doctors regarding the step three listing inquiry, and the ALJ evaluated within the context of the relevant listings the later medical evidence. Other than insisting that an updated medical opinion should have been obtained, Ms. Harpool does not suggest that the administrative record lacked sufficient evidence to permit an evaluation of whether she was disabled. And she cannot point to a line of evidence that the ALJ failed to evaluate in the context of the listings or otherwise in determining whether she is disabled. The court finds that the ALJ was not required to summon a medical expert to testify at the hearing. His decision that no listing was met is supported by substantial evidence, including the opinions of state agency doctors Neville and Larsen.

**B.     The ALJ's accommodations within the RFC for Ms. Harpool's impaired mental functioning are supported by substantial evidence.**

The ALJ's residual functional capacity determination included several significant work restrictions that he found necessary in light of the longitudinal record of Ms. Harpool's mental impairments. He limited her to work (a) that is simple and unskilled; (b) where contact with others is routine, superficial, and incidental to the work performed; and (c) that requires a regular break every two hours and does not demand any fast-paced production. (R. 16). To support this RFC, the ALJ described mental health evaluation and treatment records spanning 2009 through 2011 and discussed Ms. Harpool's hearing testimony. He contrasted Ms. Harpool's allegations that she has suffered from debilitating mental impairments since 2004 and that they prevent her from holding a job with the fact

8

that she worked in 2005, 2006, and 2008 at levels constituting substantial gainful activity. (R. 19-20). He found that Ms. Harpool's hearing testimony that she hears voices, has twice monthly panic attacks, and sees spots was inconsistent with numerous mental status examinations. He also noted that Ms. Harpool had reported to her care providers in late 2009 and early 2010 good improvement in her mental health as a result of being prescribed and taking medication (including Paxil and Abilify). He further noted, however, that she then began skipping or cancelling mental health treatment appointments for a substantial period in 2010, and when she returned to treatment in late 2010 and early 2011, she acknowledged that failing to take her medication had led in the past to poor behavior management. (R. 19-20).

The ALJ also addressed low GAF scores reported in some of Ms. Harpool's mental examinations and found that they represented snap-shot evaluations influenced by outside stressors reported by Ms. Harpool, such as domestic violence, unemployment, and acute financial need. These scores, he correctly found, did not require a finding that Ms. Harpool cannot work. *See, e.g., Denton v. Astrue,* 596 F.3d 419, 425 (7th Cir. 2010) (noting that an ALJ is not required to determine disability based entirely on GAF scores); *Wilkins v. Barnhart,* 69 Fed. Appx. 775 at *4 (7th Cir. 2003) (cited by *Denton*) (stating that ALJ was not required to mention a low GAF score of 40 because a GAF score is designed to influence treatment decisions and not to measure disability under the Social Security Act). Moreover, the "low" GAF score of 49 assigned by state agency psychologist Dr. Guy as part of

his mental status examination in February 2009 was among the information that state agency psychologist Dr. Neville considered in his assessment of Ms. Harpool's mental residual functional capacity, to which the ALJ gave great weight.

The ALJ's RFC is supported by the longitudinal record, his evaluation of Ms. Harpool's credibility in light of it,[2] and the functional capacity evaluation provided by state agency psychologist Kenneth Neville, to which the ALJ assigned great weight. Ms. Harpool's complaint that the RFC is erroneous because it contains nothing to account for any deficiencies in social functioning or in concentration, persistence, or pace, is belied by the RFC itself and the ALJ's express reliance on Dr. Neville's opinion that Ms. Harpool is capable of maintaining a "very basic routine and persist with tasks" and "retains the ability to perform SRT [simple, repetitive tasks] in a work environment that does not emphasize constant social contact." (R. 17, 20, 435)

We do not find any legal error in the ALJ's analysis of an appropriate RFC or that he failed to discuss and account for any line of evidence detracting from his conclusion. Because, as the ALJ found, the RFC is consistent with the demands of

---

[2] The ALJ outlined the reasons he did not believe Ms. Harpool's statements regarding the debilitating effects of her mental impairments, consistent with the requirements of Social Security Ruling 96-7p, which required him to consider objective medical evidence as well as any other pertinent evidence (such as Ms. Harpool's daily living activities, treating history, work history, and the effectiveness of her medication) relevant to evaluating the extent to which Ms. Harpool has functioned despite the severity of symptoms she alleged. Based on the record, we do not find that the negative credibility finding is "patently wrong." *Craft v. Astrue,* 539 F.3d 668, 678 (7th Cir. 2008) (ALJ's evaluation of the claimant's credibility will not be set aside unless it is patently wrong). Nor is the ALJ's recitation of the ubiquitous backwards credibility boilerplate a reason for remand, because the decision provides a fair sense of the ALJ's reasons for doubting Ms. Harpool's statements. *Bjornson v. Astrue,* 671 F.3d 640, 645 (7th Cir. 2012) (ALJ's recitation of backwards boilerplate purporting to reject the claimants statements of the limiting effects of her impairments "to the extent they are inconsistent" with the RFC determination does not require remand where the ALJ separately documented his reasons for finding the claimant unworthy of belief).

significant jobs available in Indiana, we must affirm the Commissioner's decision that Mr. Harpool is not disabled.

## Conclusion

For the reasons detailed herein, we AFFIRM the decision of the Commissioner.

IT IS SO ORDERED.

Date: 09/24/2013

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email generated by the court's ECF system